(No. 35812.

MARGARET E. CUNNINGHAM *et al.*, Appellants, *vs.* WILLIAM BURT BROWN *et al.*, Appellees.

*Opinion filed January 20, 1961.—Rehearing denied March 27, 1961.*

JOHN ALAN APPLEMAN, of Urbana, for appellants.

RENO & O'BYRNE, and DOBBINS & FRAKER, both of Champaign, and WINKLEMANN & WINKLEMANN, of Urbana, (CREED D. TUCKER, of counsel,) for appellees.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The primary question presented by this appeal is whether section 14 of article VI of the Liquor Control Act, (Ill. Rev. Stat. 1957, chap. 43, par. 135,) provides the only remedy against tavern operators and owners of tavern premises for injuries to person, property or means of support by an intoxicated person or in consequence of intoxication.

Margaret E. Cunningham, individually and as administratrix of her deceased husband's estate, suing for the use and benefit of herself and his two minor children, and the minor children individually, by their mother and next friend, brought an action for damages in the circuit court of Champaign County against certain tavern operators. Upon motion of defendants, counts II and III of the complaint were dismissed. At the same time the court, acting on the ground that multiple claims for relief were involved within the meaning of section 50(2) of the Civil Practice Act, made an express finding that there is no just reason for delaying appeal. (Ill. Rev. Stat. 1959, chap. 110, par. 50(2).) The plaintiffs seek review in this court because a constitutional question is involved.

It is alleged that the decedent became despondent as a result of intoxication and took his own life on February 3, 1959. The counts in question are based on the theory that, in addition to the remedy provided in section 14 of article VI of the Liquor Control Act, there exists one or both of the following remedies: (1) a civil action for violation of section 12 of article VI of the Liquor Control Act which prohibits the sale, gift or delivery of alcoholic liquor "to any intoxicated person or to any person known * * * to be an habitual drunkard, spendthrift, insane, mentally ill, mentally deficient or in need of mental treatment": (2) a common-law action against a tavern operator who supplies intoxicating liquor to a person when the supplier knows the consumer has no volition with regard to

consuming the intoxicant, therefore causing his intoxication or further intoxication and resulting in injury to the consumer or a third party. Count II is based on a violation of section 12 and count III is based on the common-law theory of liability. Damages are prayed in the sum of $100,000, or in such amount as may be permitted under the Wrongful Death Act. Ill. Rev. Stat. 1957, chap. 70, par. 2.

We must consider at the outset a motion to dismiss the appeal on the ground that the complaint does not involve multiple claims but only a single claim stated in various ways. Clearly the mere statement of a claim in several ways, by multiple counts, does not warrant separate appeal; and a trial court, where such is the case, cannot confer appellate jurisdiction by a finding that there is no just reason for delaying enforcement or appeal. (*Veach* v. *Great Atlantic & Pacific Tea Co.* 22 Ill. App. 2d 179.) In the case at bar, however, the claim under count I for relief under section 14 of article VI of the Liquor Control Act is different from the claim under counts II and III, which allege liability under the common law or section 12 of article VI of the Liquor Control act. Although arising from the same occurrence or transaction, the bases of recovery are different. Section 50(2) was intended to apply wherever a final judgment determines fewer than all the rights and liabilities in issue. (*Ariola* v. *Nigro,* 13 Ill.2d 200.) We think that such is the case here, and that it does not matter, in determining whether multiple counts allege multiple claims for relief, that recovery under one would bar recovery of additional damages under the others. The case is properly here for review.

The substantive issue in this case is one of first impression before this court. No case has been cited by the plaintiffs nor have we found one where, prior to the enactment of the original Dram Shop Act of 1872, (Laws of 1871-72, pp. 552-56,) recovery was sought from a supplier of alcoholic liquor for damages inflicted by an intoxicated person

or resulting from the intoxication. After the passage of that act and its subsequent amendments all actions against tavern owners were brought under the statute. This was due no doubt to the fact that under the statute, fault or wrongdoing on the part of the tavern owner was not essential to his liability. In addition, liability extended to persons other than the one directly causing injury, and recoverable damages were unlimited in amount. The question of whether the common law also provided a remedy against the tavern owner was unimportant since liability under the statute was broader and the recoverable damages unlimited.

In 1949, however, the act was amended in two important aspects with regard to recoverable damages. (Laws of 1949, p. 816.) The provision relating to the recovery of exemplary damages was omitted and recoverable damages were restricted to a maximum of $15,000. It was after these amendments that the question of a tavern owner's liability outside of section 14 became significant. See Moran, Theories of Liability, 1958 Law Forum, p. 191.

Plaintiffs contend that the legislature, by enacting section 14 of article VI of the Liquor Control Act, intended to confer additional causes of action where no liability would have arisen at common law or by violation of the prohibitory provisions of section 12, and that it intended to establish a liability without fault and not an immunity from *full* compensatory damages where there is fault. They then assert that if the legislature intended section 14 to be their exclusive remedy, this court must recognize a common-law remedy because section 19 of article II of our constitution provides that "Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation; * * *." That provision, they say, means a complete and adequate remedy, which section 14 does not provide when there is fault on the part of the tavern owner or operator.

We believe that a brief glance at the historical back-

ground of the initial Dram Shop Act and the remedies provided for therein will answer the question of whether the remedy provided in section 14 was intended to confer a cause of action in addition to that alleged to arise under the common law or by virtue of section 12.

Prior to the so-called "Temperance Bill" of 1872 (Laws of 1871-72, pp. 552-56), control of the liquor traffic in this State was handled, if at all, by municipalities through local ordinances. (See, *e.g., Goddard* v. *Town of Jacksonville,* 15 Ill. 588; *Pendergast* v. *City of Peru,* 20 Ill. 51; *City of Pekin* v. *Smelzel,* 21 Ill. 464.) These ordinances usually provided that a license must be obtained in order to sell alcoholic liquor in small quantities within the municipality. There was no statute making it a crime to sell intoxicating liquor to a minor, intoxicated person, or insane person and there were no decisions of this court or the Appellate Court concerning the liability of a tavern owner or operator for injuries resulting from intoxication.

After the Civil War a great wave of temperance reform, spearheaded to a great extent by women, swept the nation. In commenting upon this atmosphere of the period, the writers in "A Centennial History of Illinois" state: "The new social consciousness which was influencing education and religion in the seventies found in the temperance movement a concrete issue upon which it could lavish its energy. * * * The definite goal at which the temperance forces were aiming was the enactment of a law which would adequately express their attitude toward the liquor traffic and which would 'provide against the evils resulting from the sale of intoxicating liquors in the State of Illinois.' * * * Before the opposition forces fully realized how strong the temperance wave had become, however, their agitation, meetings, pleas and persuasion culminated in the passage of the temperance bill of 1872." 4 Bogart and Thompson, A Centennial History of Illinois, pp. 42-44, (1920).

The title of the 1872 act read "An act to provide against the evils resulting from the sale of intoxicating liquors in the state of Illinois." Section 2, which is incorporated as section 12 of article VI of the present act, made it unlawful "to sell intoxicating liquors to minors, unless upon the written order of their parents, guardians or family physicians, or to persons intoxicated, or who are in the habit of getting intoxicated." There was no prohibition against selling liquor to insane persons.

Section 5, which is incorporated as section 14 of article VI of the present act, provided "Every * * * person, who shall be injured in person or property, or means of support, by any intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons; and any person or persons owning * * * any building or premises, and having knowledge that intoxicating liquors are to be sold therein, or who, having leased the same for other purposes, shall knowingly permit therein the sale of any intoxicating liquors that have caused, in whole or in part, the intoxication of any person, shall be liable, severally or jointly, with the person or persons selling or giving intoxicating liquors aforesaid, for all damages sustained, and for exemplary damages; * * *."

The historical background of the act seems to disclaim any notion that it was intended to complement a common-law remedy against the tavern owners and operators. We would be delving in judicial metaphysics if we were to say that the legislature intended to provide a remedy in addition to a common-law remedy which existed but had not as yet been declared by the courts. Legislative intent must be ascertained through examination of the practical considerations to which the legislature directed itself when

enacting section 5 of the original statute. These considerations are: the fact that the legislature found no common-law precedent for the liability of a tavern operator for the mere sale of intoxicating liquor, and the fact that the temperance forces were demanding that the cost of the intoxicating liquor should bear the damages it caused. The inescapable conclusion is that the legislature did not intend the act to be complementary to a common-law right it knew nothing about, but, on the contrary, intended to create a remedy in an area where it believed none existed.

A reading of the act of 1872 also leads to the conclusion that section 5 was not intended to provide a remedy in addition to a civil remedy for the violation of section 2. These two sections together with eight other sections of the act were all enacted at the same time. The legislature in sections 6, 8 and 9 carefully laid out the procedure to be followed and the court in which an action should be brought for the violation of section 2 or for an action arising under section 5. A civil remedy was not left to inference but was carefully spelled out in section 5. In addition, the provision for exemplary damages in section 5 reveals that the legislature contemplated that actions predicated on unlawful sales as defined in section 2 would be brought under section 5. Exemplary damages are recoverable only when the conduct complained of is accompanied by certain aggravating circumstances such as wantonness, wilfulness or recklessness. (*Eshelman* v. *Rawalt,* 298 Ill. 192.) We are of the opinion that the only civil remedy under the act of 1872 was that provided in section 5. Since section 5 is incorporated as section 14 of article VI under the present act, that section provides the only civil remedy under our present act.

This brings us to the question of whether we should recognize a common-law remedy in addition to the remedy provided in section 14. The plaintiffs concede that the common law provided no remedy for the mere sale of alcholic liquor to the ordinary man, either on the theory that

it was a direct wrong or on the ground that it was negligence, which imposes a legal liability on the seller for damages resulting from intoxication. (*Cruse* v. *Aden,* 127 Ill. 231; *Howlett* v. *Doglio,* 402 Ill. 311; *Cole* v. *Rush,* 45 Cal. 2d 345; *Seibel* v. *Leach,* 233 Wis. 66; *Scott* v. *Greenville Pharmacy,* 212 A.C. 485; *Anderson* v. *Diaz,* 77 Ark. 606, *State* v. *Hatfield,* 197 Md. 249; *Cowman* v. *Hansen,* 250 Iowa 358.) They point out that the reason generally given for the rule is that the drinking, not the selling, is the proximate cause of the intoxication. (See, *e.g., Cole* v. *Rush,* 45 Cal. 2d 345; *Joyce* v. *Hatfield,* 197 Md. 249.) They argue however that where a sale is made to one who is intoxicated or insane and the incapacity of the consumer to choose is known to the vendor, or should be known, then the sale and consumption are merged and in reality become the act of the seller and the proximate cause of the intoxication.

The plaintiffs' argument has some merit, and if no more were involved than laying down a new rule of liability it would warrant more serious consideration. But the lack of common-law precedent for such liability motivated our legislature, as well as the legislatures in 21 other States, to create such liability. (Statutory citations for the other 21 States together with the scope of liability imposed can be found in Ogilvie, History and Appraisal of the Illinois Dram Shop Act, 1958 Law Forum, p. 180, n. 30.) The remedy we are asked to recognize would, except as to recoverable damages, be almost coincidental with the remedy provided in section 14. Section 19 of article II of the constitution does not require the courts to recognize a remedy when the legislature has already provided such remedy even though the statutory remedy be limited as to recoverable damages. *Hall* v. *Gillins,* 13 Ill.2d 26.

We hold that section 14 of article VI of the Liquor Control Act provides the only remedy against tavern operators and owners of tavern premises for injuries to person,

property or means of support by an intoxicated person or in consequence of intoxication. Since the counts in question were not based on section 14, they were properly dismissed.

The judgment of the circuit court of Champaign County is hereby affirmed.

*Judgment affirmed.*