George NISBET, and Clotilda Nisbet, Plaintiffs/Appellants,

v.

Russell Paul BUCHER, et al., Defendants/Respondents.

No. 70924.

Missouri Court of Appeals, Eastern District, Division Five.

April 29, 1997.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 3, 1997.

Application to Transfer Denied Aug. 19, 1997.

Jess W. Ullom, Joy D. McMillen, Chesterfield, for Appellants.

Daniel Wilke, Richard Tjepkema, Clayton, for Bucher.

Frederick Schwetye, Robert Davis, Union, for Fraternities–Sigma Pi etc.

Teresa Drew, Frans Von Kaenel, St. Louis, for Fraternities–Sigma Nu, etc.

Donald James, Michelle Retzer, St. Louis, for Eric James Boyer.

CRANDALL, Judge.

Plaintiffs, Clotilda and George Nisbet, appeal from the trial court's dismissal of their wrongful death action against defendants, Russell Paul Bucher, et al., for failure to state a claim upon which relief can be granted. We reverse and remand.

■ Our review of a motion to dismiss "requires an examination of the pleadings, allowing them their broadest intendment, treating all facts alleged as true, construing allegations favorably to the plaintiff, and determining whether the petition invokes principles of substantive law." *Terre Du Lac Ass'n, Inc. v. Terre Du Lac, Inc.,* 737 S.W.2d 206, 211 (Mo.App.1987). A petition is not to be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Id.* In a motion to dismiss for failure to state a claim, the burden is on the defendant to establish that the elements pleaded by the plaintiff fail to state a cause of action. Thus, in contrast to the requirement in Rule 74.04 for a definite response to a motion for summary judgment, the plaintiff is not required to respond to the defendant's motion to dismiss for failure to state a claim.

Within the framework of our review, we consider plaintiffs' petition. According to the pleaded facts, plaintiffs' son, Michael Nisbet, was a freshman at the University of Missouri at Rolla (UMR). He was invited to become a member of defendant, St. Pat's Board, Inc., a campus organization responsible for organizing the annual St. Pat's festivities at UMR. The St. Pat's Board was comprised of representatives from various campus organizations, including fraternities. To gain membership on the St. Pat's Board, Michael was required to participate in an initiation. Plaintiffs alleged the initiation traditionally involved the following activities:

> (a) the coerced chugging and excessive consumption of alcohol in both normal and noxious content; (b) the continued consumption of alcohol after becoming intoxicated, and even to the point of regurgitation and losing consciousness, and on one occasion, only three (3) years prior to the event herein, to death; (c) physical contact, pushing, restraint, assault and abuse; and (d) verbal taunting, ridicule and challenge.

The initiation involving Michael took place on October 19, 1991. The initiation was conducted on two different premises owned and controlled by defendants, Sigma Pi, Alpha Iota Chapter, Alpha Iota Building Association, Inc., and by defendants, Sigma Nu, Gamma Xi Chapter, and Gamma Xi Property Association, Inc. (all of these defendants collectively referred to as "fraternities"). The initiation was conducted by defendant, St. Pat's Board, and by its members, specifically defendants, Eric James Boyer, Kenneth Wayne Smiley, Russell Paul Bucher, and Steven Scott Hunt, acting individually and as agents of the St. Pat's Board (these defendants collectively referred to as "individual defendants").

The petition alleged that the individual defendants forced Michael to consume intoxicants, including a "heated preparation of grain alcohol and green peas." The individual defendants continued to coerce Michael to consume the alcoholic concoction until he became intoxicated and after he lapsed into unconsciousness. While he was unconscious, they placed him face down on the ground and left him unattended, despite the fact that he was "secreting green fluid from his nose and mouth." The individual defendants did not administer first aid to Michael, did not seek medical attention for him, and did not call 911. They delayed medical treatment for him. While he was in an unconscious state and not breathing, they transported him to a "non-medical destination." They did not prohibit or terminate the hazing activities, despite their knowledge of the death of a participant three years earlier. Michael died on October 21, 1991.

In addition, plaintiffs alleged that the fraternities and "their agents" sponsored and permitted the hazing activities to be conducted on their premises in violation of the Missouri hazing statute, Section 578.360 RSMo 1994,[1] and of the antihazing policy of UMR.

1. Section 578.360 RSMo 1994 defines hazing as follows:

They also failed to supervise or ban the initiation activities on their premises and failed to report the hazing activities to UMR or to the appropriate authorities. The "[a]gents, servants, and/or employees" of the fraternities did not report the hazing activities to their superiors within their respective fraternities and/or such reports were ignored by the fraternities. The fraternities did not promulgate or enforce adequate anti-hazing policies and violated such policies in existence at the time with regard to the participation of their own fraternal members in hazing activities and with regard to the use of their respective premises as sites for hazing activities. They did not call 911 or seek medical attention for Michael. They delayed medical treatment for Michael by failing to transport him to a hospital and by permitting the individual defendants to transport him "improperly" when they knew he was in a life-threatening condition.

Plaintiffs brought a wrongful death action against defendants, alleging that defendants violated their duties to Michael and engaged in "negligent, careless and/or reckless" conduct toward him. The petition pleaded that as the direct result of defendants' actions, Michael suffered oxygen deprivation to the brain, the breathing of foreign matter into his lungs, sudden cessation of his heart and lungs, alcohol intoxication, abnormally low body temperature, and death.

Several defendants filed motions to dismiss plaintiffs' second amended petition for failure to state a claim upon which relief can be granted. The motions to dismiss claimed that defendants' status as social hosts barred recovery by Michael, because the proximate cause of Michael's injury was not the furnishing of alcohol to him but his consumption of alcohol. The trial court sustained the motions to dismiss as to defendants, Boyer, Bucher, Hunt [2], Sigma Pi Fraternity, Alpha Iota Chapter, Alpha Iota Building Association, Inc., Sigma Nu Fraternity, Gamma Xi Chapter, and Gamma Xi Property Association, Inc. In ruling on the motions, the court stated as the ground for dismissal plaintiffs' failure "to state a cause of action under the hazing statute § 578.360, et seq." That same day, the court on its own motion dismissed plaintiffs' second amended petition as to the remaining defendants, Smiley and St. Pat's Board [3], on the ground that "a violation of the hazing statute does not give rise to a private cause of action as to these Defendants as a matter of law."

█ As a preface to discussing the substance of plaintiffs' petition, we address its draftsmanship. Plaintiffs' second amended petition was pleaded in one count. It appears, however, that plaintiffs attempted to include more than one cause of action in a single count. Rule 55.11 requires that each claim be stated in a separate count "whenever a separation facilitates the clear presentation of the matters set forth." The better practice for plaintiffs would be to advance their theories in separate counts to facilitate

"**Hazing**", a willful act, occurring on or off the campus of [a public or private college or university], directed against a student or a prospective member of an organization operating under the sanction of an educational institution, that recklessly endangers the mental or physical health or safety of a student or prospective member for the purpose of initiation or admission into or continued membership in any such organization to the extent that such person is knowingly placed at substantial risk of the loss of life or substantial bodily or psychological harm. Acts of hazing shall include:

(a) Any activity which recklessly endangers the physical health or safety of the student or prospective member, including but not limited to physical brutality, whipping, beating, branding, exposure to the elements, forced consumption of any food, liquor, drug or other substance or forced smoking or chewing of tobacco products; or

(b) Any activity which recklessly endangers the mental health of the student or prospective member, including but not limited to sleep deprivation, physical confinement, or other extreme stress inducing activity....

2. Although the trial court specified that the motion to dismiss for failure to state a claim was granted as to defendant-Hunt, from the record on appeal it is unclear whether Hunt either filed his own motion to dismiss or joined in a motion filed by another defendant. He is, however, listed as a party to this appeal and has adopted the brief of defendant-Boyer.

3. From the record on appeal it is unclear whether the St. Pat's Board was served with process. Defendant–Smiley and the St. Pat's Board did not file motions to dismiss. In addition, neither Smiley nor the St. Pat's Board filed briefs or adopted the briefs of any defendant on appeal.

the clear presentation of their theories of recovery.

The ruling of the trial court dismissing plaintiffs' wrongful death action exacerbated the confusion presented by the petition. No defendant filed a motion for a more definite statement under Rule 55.27(d). Rather, some defendants filed motions to dismiss under Rule 55.27(a)(6) on the basis that the petition failed to state a claim upon which relief can be granted. In ruling on the motions as to some defendants and on its own motion as to other defendants, the trial court dismissed the entire petition as to all defendants on the basis that the hazing statute did not give rise to a private cause of action. Although we decline to delineate every theory that was pleaded in the petition, the court's ruling did not address all of the theories of recovery advanced by the petition. Our inquiry is limited, however, to a determination of whether plaintiffs in their second amended petition stated a claim upon which relief can be granted.

On appeal, plaintiffs raise four claims of error challenging the trial court's dismissal of their second amended petition. They contend they pleaded a cause of action under four theories: (1) defendants' violation of the hazing statute, § 578.360, gave rise to a private cause of action against defendants (Point I); (2) the fraternities were liable not only under the active negligence doctrine for the dangerous activities conducted on their premises (Point II), (3) but also under the special facts and circumstances exception which recognizes a duty on the owner of the premises to protect a third party from the known conduct of another (Point III); and (4) defendants' conduct gave rise to an action for common law negligence, including, but not limited to defendants' participation in the potentially dangerous initiation activities and their failure to provide medical assistance to Michael (Point IV). We only consider plaintiffs' contention that they stated a cause of action against defendants in common law negligence, because that issue is dispositive of whether plaintiffs' petition stated a claim upon which relief can be granted.

█ The elements of a negligence action are "(1) [a] legal duty on the part of the defendant to conform to a certain standard of conduct to protect others against unreasonable risks; (2) a breach of that duty; (3) a proximate cause between the conduct and the resulting injury; and (4) actual damages to claimant's person or property." *Hoover's Dairy, Inc. v. Mid–America Dairymen Inc./Special Products, Inc.*, 700 S.W.2d 426, 431 (Mo. banc 1985). Defendants dispute the existence of the element of proximate cause, arguing the cause of Michael's death was his voluntary consumption of alcohol and not defendants' furnishing alcohol to him.

█ A plaintiff must establish both causation in fact and proximate cause. *Peterson v. Summit Fitness, Inc.*, 920 S.W.2d 928, 936 (Mo.App. W.D.1996). Causation in fact is established if the plaintiff shows that "but for" the defendant's conduct, the accident would not have occurred. *Id.* To make a prima facie showing of causation, the plaintiff must show the defendant's negligent conduct more probably than not was a cause of the injury. *Morrison v. St. Luke's Health Corp.*, 929 S.W.2d 898, 901 (Mo.App. E.D.1996). The defendant's negligence need not be the sole cause of the plaintiff's injury, but simply a cause or a contributing cause. *Id.*

Defendants rely on *Andres v. Alpha Kappa Lambda Fraternity*, 730 S.W.2d 547 (Mo. banc 1987), to support their position that their actions were not the proximate cause of Michael's death. In *Andres*, the parents of a fraternity member, who died of acute alcohol intoxication after a "mixer" with a sorority, brought a wrongful death action against the local and national fraternities. *Id.* at 548–549. The trial court found that the local fraternity was not civilly liable for furnishing alcoholic beverages to the deceased member because its status as a social host insulated it from liability. *Id.* at 553. Although the *Andres* court focused its analysis on the absence of a duty on the part of the local fraternity to refrain from serving alcoholic beverages to members, the present defendants focus on language in *Andres* that the proximate cause of the injuries connected with providing alcohol in social settings "is the consumption rather than the furnishing of the intoxicating substances." *Id.* at 551.

■ The allegations in plaintiffs' petition establish that the present case is factually distinguishable from *Andres*. The facts, as pleaded in the petition, do not indicate that Michael was merely furnished with alcohol by defendants and drank himself to death. The pleaded facts describe a situation where defendants pressured Michael to drink alcoholic concoctions for the specific purpose of inducing intoxication. Michael's consumption of alcohol was required as a condition to his becoming a member of the St. Pat's Board and played a key role in the initiation activities. This is not a situation where defendants supplied Michael with a quantity of alcohol and did nothing else.

The facts, as pleaded, indicate that the case before us is analogous to the facts of *Quinn v. Sigma Rho Chapter of Beta Theta Pi Fraternity*, 155 Ill.App.3d 231, 107 Ill.Dec. 824, 507 N.E.2d 1193 (4 Dist.1987). In that case, a fraternity required a pledge to participate in its initiation ceremony in order to become a member; and as part of the ceremony, directed the pledge to consume an excessive amount of intoxicants. *Id.* at 826, 507 N.E.2d at 1195. After considerable drinking, the members brought the unconscious pledge back to the fraternity house and left him on the floor. *Id.* When he awoke, he could not properly use his hands or arms; and it was discovered later that he had suffered neurological damage. *Id.* The Illinois Court of Appeals reversed the dismissal of the pledge's complaint, holding that in light of the state's antihazing statute, the fraternity had a duty to refrain from requiring participation in dangerous acts, including the excessive consumption of alcoholic beverages, and that breach of that duty created a cause of action in common law negligence. *Id.* at 829, 507 N.E.2d at 1198. The court reasoned that the case was distinguishable from a social host-guest situation because the pledge was required to drink to the point of intoxication. *Id.* As the court observed, "The social pressure that exists once a . . . university student has pledged into a fraternal organization is so great that compliance with initiation requirements places him or her in a position of acting in a coerced manner." *Id.*; *see also Haben v. Anderson*, 232 Ill.App.3d 260, 173 Ill.Dec. 681, 597 N.E.2d 655 (3 Dist.

1992) (complaint by father of deceased university student stated a cause of action against members of lacrosse club where father alleged alcohol consumption was a de facto requirement during initiation ceremony); *Ballou v. Sigma Nu General Fraternity*, 291 S.C. 140, 352 S.E.2d 488 (App.1986) (jury verdict against fraternity upheld in wrongful death action arising out of alcohol-related death of pledge following his mandatory participation in "hell night" initiation, finding that the purpose for which, the manner in which, and the extent to which fraternity members furnished alcohol to all pledges proximately caused the pledge's death).

■ We recognize that Michael could have avoided the situation by walking away from the initiation activities. In that respect, Michael's actions could be construed as voluntary. Yet, as the petition alleges, participation in the initiation activities was a prerequisite for membership on the St. Pat's Board. If great social pressure was applied to Michael to comply with the membership "qualifications" of the St. Pat's Board, he may have been blinded to the danger he was facing. *See Quinn*, 107 Ill.Dec. 824, 507 N.E.2d at 1197. In other words, his will to drink or not drink may have been overborne by the requirements to achieve membership on the St. Pat's Board and by the pressure he was receiving from defendants. *See Haben*, 173 Ill.Dec. 681, 597 N.E.2d at 659. It is a question for the trier of fact as to what degree Michael was coerced by defendants to consume excessive quantities of alcohol and as to what extent his will to make a conscious decision about his alcohol consumption was overcome. *See id.* "To the extent that plaintiff acted willingly, liability can be transferred to him under principles of comparative negligence." *Quinn*, 107 Ill. Dec. 824, 507 N.E.2d at 1197.

Thus, the allegations in plaintiffs' petition sufficiently pleaded that absent defendants' conduct, Michael would not have consumed the fatal quantity of alcohol. Plaintiffs have adequately pleaded that defendants' conduct was the proximate cause of Michael's death and thus have stated a cause of action against defendants under a common law negligence theory.

Moreover, plaintiffs sufficiently pleaded that the proximate cause of Michael's death was the abandonment of him by defendants while he was in a state of acute alcohol intoxication brought on by their acts. *See Ballou*, 352 S.E.2d at 494. One who acts gratuitously or otherwise is liable for the negligent performance of an act, even though there was no duty to act originally. *Strickland v. Taco Bell Corp.*, 849 S.W.2d 127, 132 (Mo.App. E.D.1993). Plaintiffs alleged that defendants, aware of Michael's condition, left him unattended. Defendants not only failed to seek medical assistance for him but also delayed medical treatment for him. Defendants' failure to call 911 or to take Michael to the hospital when they realized he was in a perilous condition effectively terminated his chance of survival. *See Ballou*, 352 S.E.2d at 494. Thus, plaintiffs stated a claim against defendants for their negligence in rendering services to Michael after he became incapacitated.

In recognizing that plaintiffs' petition stated a cause of action under a common law negligence theory, it is not necessary to decide whether defendants' violation of the hazing statute either constituted negligence per se or gave rise to a private cause of action. All of the acts proscribed by the hazing statute are also actionable at common law. In the context of this case, the hazing statute merely evinces a public policy that certain activities directed against prospective members of an organization operating under the sanction of a public or private college or university will not be tolerated. The legislature's enactment of a statute against hazing indicates "a social policy against embarrassing or endangering our youth through thoughtless and meaningless activity." *See Quinn*, 107 Ill.Dec. 824, 507 N.E.2d at 1198.

An examination of the pleadings, giving them their broadest intendment, indicates that the pleaded facts were sufficient to state a cause of action in negligence against defendants. The trial court erred in dismissing plaintiffs' petition for failure to state a claim upon which relief can be granted.

The judgment of the trial court is reversed and the cause is remanded.

AHRENS, C.J., and KAROHL, J., concur.